On behalf of the Appalachian, Mr. Eric S. Mayle. On behalf of the Appalachian, Ms. Jennifer J. Gipsley. Thank you. Mr. Mayle. Good morning. May it please the court, counsel. My name is Eric Mayle, like the U.S. Mayle, and I represent the appellant, Eric D. Puryear. This is a seatbelt violation. That's as far as we're going here. These are the words that the Honorable Judge Weach stated at the motion to suppress and dismiss that Mr. Puryear had filed and argued along the way in this case. This sentiment was repeated multiple times throughout the process, both pre-trial and then during trial. And what it, the import of this statement was essentially that nothing beyond testimony, evidence regarding whether Mr. Puryear was wearing his seatbelt is relevant to this matter. It's just a seatbelt ticket. Well, as well meaning as that statement and that sentiment may have been and probably was, it does tend to oversimplify the matter. As the record reveals, this is a complicated case. There have been several motions. There is quite a bit more, at least in the perspective of the defense, going on here than was actually set forth at trial and was ever able to be put before any of the judges that looked at the matter. At every stage of the trial, both pre-trial, the motion to suppress, the motion to dismiss and the trial itself, Eric Puryear was prevented from putting on evidence regarding what Officer James Page was doing at the very, very near the time of the traffic stop. Did you also challenge the propriety of the initial stop? Yes, Your Honor. And that was really what the focus of the motion to suppress and the motion to dismiss was. If you boil it down to it, the point that Mr. Puryear was making was that the original stop itself was without probable cause. Why, what was that? Because of the evidence? Because there was some improper motive or pretextual motive? What was the basis for that argument? Pretextual motive, Your Honor. Let me ask you this question, and this was raised in my mind as I was reading the briefs. If there's a legitimate objective basis for stopping a motor vehicle, is there a constitutional violation if the officer also arguably has some type of an improper subjective motive? I don't believe so, and I don't think that that should change the analysis here. Officer Page did testify that he observed Mr. Puryear without a seat belt. And if that were true, and if the court accepted that as true, I think the court could have found that there was probable cause for the stop. The question in our mind, or in our position, is really what were we able to do to contest that? Because essentially that would give, if all the officer has to do is testify that he saw a seat belt violation, and that is basically what happened here, because at the motion to suppress hearing, he did testify to that. There were three witnesses on the other side, and they testified to the contrary. The court found that there was probable cause. No, they didn't really testify to the contrary. They didn't testify that he didn't see the belt on. They testified Mr. Puryear had the belt on. That's correct. They did testify that there was. They didn't say that as he drove by, he had a brown paper bag over his head. That's correct. They did not say that the officer couldn't have seen it. However, they did mention each one of the witnesses inside the vehicle testified, and I think credibly, that they didn't see the officer pass them in the direction that the officer claimed to have passed them. You keep saying I think. And I shouldn't say that. Right. And the judge heard the testimony, and then the jury heard essentially the same testimony. And I apologize for that. It's the judge at the motion to suppress and the jury at the jury trial. Absolutely. It's not about what I think here. Right. And so I would like to correct that statement. I apologize for that. Your argument is that the evidence is insufficient as a matter of law to convict. I don't believe so. I think that the jury was wrong and that a rational finder of fact would return a verdict to the contrary. My larger issue, and I believe— Well, that's not the standard, the Collins standard of review. Whether viewing the evidence in the light most favorable to the village here, a rational juror could find the defendant guilty of an unreasonable doubt. And there was testimony from the officer that he saw the defendant not wearing a seat belt. Yes, Your Honor, there was. A contested factual issue. There was a contested factual issue. The larger issue for the defense was the ability to contest that. Certainly, the defense was able to put on testimony from other occupants of the vehicle that Eric Greer was, in fact, wearing a seat belt. It is difficult to test the officer's credibility much beyond what the defense did at trial about what he was able to see on the day in question and at the time in question. The video that the defense sought to introduce that was ultimately held out at each stage of this does show an officer making five stops within a one-and-a-half-hour period of similar vehicles without citation being given, other than in Eric Greer's case where he was originally not given a citation and then asked for the officer's badge and identification so he could make a complaint. In that initial conversation, did the officer ask to search the vehicle? He did not. Did he ask the occupants to get out of the vehicle? He did not. So he was essentially just making a stop to issue a warning ticket and to let Mr. Puryear go on his way until Mr. Puryear then says, I want your badge number, etc., correct? That is a fair view of it, Your Honor. So what's the hidden agenda or motive of the officer who doesn't even ask the occupants to get out of the vehicle? That's usually what a cop does when they want to toss a car on a pretext stop. Yes. At the same time, Mr. Puryear did hand him his bar card at the outset, and he was asked for his identification as well as the driver. And these other stops on the video were the occupants asked to get out of the vehicle? No. Not so far as I can tell. And the videos are fairly complete. I don't see any stopping. Was there any attempt to find out who the drivers of those vehicles were or to call them as witnesses? Yes, Your Honor. We attempted to find information about those stops. Unfortunately, the video did not provide clear plate numbers. Unfortunately, the clarity of the video simply doesn't allow us to get that. Additionally, because no citation was given, there was no record of who the occupants of the vehicles were. So, unfortunately, we were not able to gather that information, though we did attempt to. Does the video reflect whether or not the occupants of those vehicles were wearing their seatbelts? It does not. Okay. What exactly, other than claiming that the jury believed in credible testimony,  Our problem is with what the defense was able to put on in trial. Obviously, our position is that we should have been able to introduce the video and the evidence of those four other stops. But more than that, Mr. Puryear has a habit of wearing his seatbelt. Well, let's start with the first premise. How, as the judge said, would the videos of the other cases prove either that the police officer was lying about the other cases and, therefore, he, even though collaterally, may be impeached, he might be impeached? Why? You're making a claim, but I just don't see where it's going. It doesn't show, it doesn't prove anything, and I can't show that it proves anything, but it has a tendency. Well, what error does it tend to establish? It tends to establish, well, and I think here is the logical process that I went through, and I believe that the court should have followed. Is there a fact of consequence in why the officer stopped the vehicle? He testified that he saw a seatbelt violation. So his reason for the stop is of consequence. If he was actually out there pulling over Ford pickup trucks and doing a warrant search because he believed that someone in a Ford pickup truck, or he was looking for someone matching that description, that tends to undercut his testimony that he was policing a seatbelt violation in this case. Right, and that goes to your protection argument that has some appeal. However, as I recall in the record, Page also testified that the video begins once he activates his emergency lights. So I'm curious, is there not a gap there? Couldn't the officer have observed a violation that would not be on the video? Yes, and certainly that would be possible based on the testimony that the officer put on at trial. As far as if he activated his lights after he fully made the turn, there is some dispute along the way, of course, about when and how the lights activate the video. But if you took his testimony and think it's proper to take the testimony at face value in that regard, he could have turned on his SWAT lights. After he observed a traffic violation. After observing and after turning his car around. Doesn't that undercut the relevancy of the evidence, though? Well, I don't believe that it does, because either way, with these other stops involved where no one's getting a citation, they're all driving similar vehicles, and he's doing a warrant check or an information check for each one of these drivers along the way, it has a tendency to show that that's in fact what he was doing. Whether it proves it, I don't think, I'll correct myself again, is not the issue. It's whether it has a tendency to make any factors of consequence more or less probable. We don't know whether or not the other stops were identical except in one way. And that is when the police officer said that he saw the seatbelt violation and the defendant in those cars said, no, I had my seatbelt on. Or he said, yeah, I took it off momentarily because I had to get some information out of my wallet or my cell phone just went off and I had to get it out of my pocket or whatever. And the police officer took the information, went back and then said, I'm going to give you a warning, gave the information back to the defendant. And then the defendant didn't say, I want your badge number and your name. So unless those cases have a badge number and a name request, demand, suggestion, how are they relevant or how are they not distinguishable from your situation? I don't, I'm not arguing that they're not distinguishable in that matter. Clearly, Mr. Perrier did something that more than what the other drivers of those vehicles did because the officer turns around and walks back to his, the vehicle he's a passenger in and gives him a citation. But in each of those stops, it's apparent that the officer takes information from the drivers and then returns the information. And that's the end of the stop. Unfortunately, it takes the information. Does he go back to his squad and run a check? Yes. And then he goes back and returns the driver's license, registration, et cetera? Yes. And it's a quick check. My office did a request for all of the information relating to the stops pursuant to the Freedom of Information Act. And as, there was no information about those other stops as far as video, squad communications between dispatch. There was nothing that could tip us off as to who those drivers were. But the officer takes the information, returns to his squad car, apparently runs their information, and then we don't have the audio. Well, the point is that we really don't know. We don't. So when you're trying to introduce or attempting, which I think you were trying to do, evidence of the officer's habit or routine, you actually, where there's a question in the case at hand, you introduce evidence of habit or routine, which is basically solid evidence of what actually occurred on those other occasions, correct? Yes. And here you don't have solid evidence of what happened on those other occasions because you don't know what the interaction was between the drivers and occupants of those vehicles and this police officer, correct? I don't. That's correct. So we can affirm for any basis and support it by the record, right? That's correct, Your Honor. Counsel, what was your argument about the constitutional, the infirmity in not having the audio working? What is my argument as far as that? Yeah, was it a constitutional violation, a discovery violation? What were you alleging that created? A constitutional violation, a due process violation because the evidence should have been preserved. There is a clear village policy on point here. The officer knew of that policy. He understood that he had to record, and there's a memo directly on point given to the officer before the stop in question. There's some evidence that it was malfunctioning. Let's assume your argument is correct. You know, it should have been working at the date and time of the stop. But I have to ask an overarching question. Is there a constitutional right to have an audio or video recording of a traffic stop? No. There is not a constitutional right to a video or audio recording of a traffic stop, or otherwise I think we would see more police stations and sheriff's offices use the audio and video. Whether I want that or not is not the question. But in this – Let me interrupt you because you seem like you're at odds, and that is Justice Hudson asked you if there's a constitutional right. But he asked it subsequent to your statement that your client had a right to have the evidence preserved. I was under the impression that there was nothing in this case relative to preservation of evidence. It was more in nature to what Justice Donald Hudson asked, which was are you entitled to have evidence made, recorded, presented, preserved that isn't there otherwise? Is there an affirmative duty to record these things, to archive these arrests? Which isn't the same thing as what you said about preserving things. So what is it that you're arguing? Are you arguing that he had a right to preserve something that wasn't there, or he had the right, as Justice Hudson was asking, which you've already conceded they're not? It is – the argument is that because there was this affirmative duty to create or make the evidence, in this case by recording the audio, the failure to do so, the knowing failure to do so, amounts to a failure to preserve evidence. Just to refine it, the duty you're referring to was created by the internal rules of the department or the village. You've conceded there is no constitutional right to have an audio or video recording, correct? Correct. Do you have any case law that supports the fact that if the village did not follow through with the policy and there were some mechanical difficulties with the equipment, that that arises to a constitutional violation? Do you have any cases that say that? In the motion to dismiss hearing, we cited to a case that is purely persuasive. It was a trial court decision, essentially, People v. Michael Bolmer, where the court analyzed a very similar set of circumstances where the officer had a village policy in effect and failed to record the traffic stop involving a DUI allegation, according to the village policy. The failure to do so under the circumstances, and there were some additional circumstances there where the officer didn't bother to show up to court, had a number of other actions that implied bad faith, that was found to be a constitutional violation, a violation of Mr. Bolmer's constitutional rights. Well, there's no bad faith allegation here. I mean, the officer, I believe a village official testified that there were mechanical problems with this vehicle. The officer had no control over that, did he? The officer did have control over the audio in this case. The records that the village was able to produce show that the audio and video system had been repaired prior to the traffic stop. The officer testified inconsistently on this point, whether or not he had his audio on or knew that he was supposed to activate it and failed to do so. But our position, the defense's position, should that evidence have been considered, is that it would have established the officer's bad faith. Do the rules provide, the municipal corporation's rules provide that if the rules aren't complied with, then there shall be sanctions similar to what you propose? No, Your Honor. Any other questions?  Thank you. Thank you, Your Honor. You'll have an opportunity to make rebuttal. Thank you. Ms. Gibson? May it please the Court, morning justices. Again, I'm Jennifer Gibson. I represent the village of Prairie Grove, and we thank you for this opportunity to address the Court this morning. It pleases the Court. I noticed that Your Honors didn't discuss much about the second issue, but I wanted to touch about some points on the second issue regarding the duration of the stop, if it's okay with Your Honors. The first point that I wanted to address is I don't think that the stop was unreasonable in duration. I don't think it became unreasonable in duration.  I think the stop lasted approximately less than ten minutes. I think the officer testified that it lasted approximately seven minutes. I guess the one thing I regret in the briefs is not analyzing the duration of the stop in conjunction with People v. Harris. People v. Gonzales, the case that it overruled in Illinois v. Cabayas. If it's okay, I'd like to take that. There's no clear, bright line, is there? Well, there is. Gonzales talked about 15 minutes or something. There is a standard, and there's a newer case that just came out after the briefings. The newer case is, I believe it's People v. Thomas. It came out October 22nd, or 27th, out of the 3rd District, and it's a pretty thoughtful case. And it runs through, while there isn't a set bright line period, a number of cases have held that the average traffic stop is 10 to 12 minutes. And it goes through a list of traffic stops that were 10 to 12 minutes, a couple that were 10 to 12 minutes, one that was 18 minutes. And it held that that was reasonable in duration. And I believe that's important because People v. Harris, in the analysis of those cases, bring us to that's the main factor here, the duration of the stop. In People v. Harris, the defendant was a passenger in a vehicle, and it was stopped for an illegal left turn. And during the course of the stop, the officer asked for the passenger's, the defendant's, identification. Subsequent check on that driver's license indicated a warrant. They found cocaine. And it went back and forth between the appellate court and the Supreme Court for a while. But the eventual ruling was that the motion to suppress was properly denied. And it gives us some instruction in that case that lawful seizures can become unlawful if prolonged behind the time reasonably required to complete the traffic stop. So it lets us know that duration is the main thing, and then it refers you to People v. Caballas for the rule. It never really analyzes the stop according to the principles of Caballas because it turns on whether the officer was, it was appropriate for the officer to ask for the driver's license of the passenger in that case. But it refers us to Caballas. And it lets us know that it's overruling Gonzalez. And just to back up a little bit, Gonzalez was a case similar facts to Harris, similar facts to Harris, where the defendant was a passenger, lawfully stopped, no front plate. And the officer asks for the ID of the defendant, finds out that the defendant has a criminal history, and then a pat-down search ensues. None of which have happened here. No. And that's the point, that all these cases, the court is discouraging traffic stops being a subterfuge for looking for other things. I think counsel's acknowledged that the officer didn't do those things here. He didn't ask the occupants to get out of the vehicle. He didn't request consent to search. So that point's made. His argument seems to be, well, the traffic stop had ended, the officer was going back to his car, and then it was unreasonably prolonged when he went back, asked for identification, wrote him a ticket. However, considering the argument, the traffic stop had ended. It was prolonged from that point forward because the defendant engaged the officer, and his actions prolonged the traffic stop. In the sense that it was then, there was a further dialogue going on between the officer and the defendant at the defendant's behest, correct? Well, and you make a good point, Justice Hobson, and you guys are confusing me because your name tags are switched here. But you make a good point, but... Fair. Okay. But I kind of, and not to invoke the ire of the court, but I kind of disagree. And I'm going to analyze it or analogize it to a phone call. People say goodbye, but they don't hang up. The phone call really hasn't ended. They've said goodbye, and I don't think that the stop really had ended. The officer tried to end the stop, but Mr. Puryear reengaged the officer. But even if you were to, even if you were just for arguendo, Your Honor, were to disagree and say that the stop had ended, a new stop had occurred, there's nothing to suppress here. And that's another thing I guess I, it came out in Mr. Mayo's reply brief. And I'd like to, there's kind of a recent case, People v. Ramirez, that basically goes through a litany in how in Illinois there are no motions to quash arrests. And it goes through an explanation that in Illinois we don't quash arrests. What we do is suppress evidence. And it encourages attorneys to frame their motion as motions to suppress evidence. And if you look at it, no further evidence was gathered at that further encounter. There was nothing to suppress. I mean, if you're not quashing the arrest, if it was justified as deception, you're saying what are you suppressing, what are you quashing? Correct. The officer had viewed the violation on 176. The officer had already had the identification, identified who the defendant was, ran the defendant's information. Well, if the stop is suppressed, he doesn't get the passenger's information. He already, correct, but he already had that during the portion of the stop that arguably was lawful at its inception. Right. So he had that. Again, his argument is it was not lawful at its inception, that it was a ruse, that he was pulling over pickup trucks routinely and not issuing citations because he's not finding suspended drivers or revoked drivers. And the theory is apparently this officer believes that there's a greater percentage of drivers of pickup trucks who are revoked or suspended than other drivers, whatever that theory is. Yeah, I appreciate that. And I, you know, I had a hard time myself understanding the argument. I live about half a mile away from that particular stop, and I think every other car there is pickup trucks. But nevertheless, I think that the point is, is that the officer's other stops before and after, they are collateral. I think on page 13 of his brief, Mr. Mayo indicates that he wanted to introduce that evidence to undercut the officer's testimony or his credibility. And that's the definition of collateral is relating only to credibility, not materiality. Materiality is whether or not he was wearing a seat belt. Does 176 run through Prairie Grove? Yes, Your Honor. How big is Prairie Grove? 7,000 people. Maybe 5,000 to 7,000 teetering on there. And was this stop made within the corporate limits of the city? Yes, Your Honor. Okay, it wasn't one of those things where they're made, the fence was seen inside the city, but the stop was made outside the city? Perhaps. And you know what? I know that the officer initially viewed it where that is, but where he pulled him over was kind of at the foot, what is called the five-way around the corner by the Walgreens. And I'm not sure if the limits extend there. So let me move ahead. We understand your argument on the prolonging of the stop, but what about this habit evidence? The habit evidence. Why shouldn't the passenger and his wife have been able to testify? And thank you for bringing that up. If you look at the defendant's motion in limine, there were three things he was trying to introduce for habit evidence. One was that he always wore his seat belt. Two was that he was a generally safety-conscious person. And three is that he was, and this is one of the words I cannot pronounce in the English language, punctilious in his observation of safety procedures. And there's no question Illinois Rule of Evidence 406 allows habit evidence, no question. The last two things that he wanted to introduce doesn't fall under habit evidence. I believe that that's character evidence. Habit evidence is a specific way of doing or a settled way of doing a particular thing. Now, he testified it was his habit to wear the seat belt, right? Yes, all the time. So why couldn't the wife and the passenger or the driver testify to that? Well, I think that to disallow that, it definitely would have been cumulative. Because he was able to get in that never once in his life has he not worn his seat belt. He was able to get in that he was a very safety-conscious person or that he was concerned about time. So that is obviously, to a certain extent, happy for the trier effect. But isn't it more compelling if it comes from third parties as opposed to what sometimes people term a self-serving statement of the defendant? Actually, in this case, I actually don't think so. I actually think that Mr. Prewier was the best person to testify about his habit. Even his wife testified that she frequently rides with him, but not all the time. And Mr. Keckler, Mr. Keckler doesn't ride with him all the time. So if you really look at it, Mr. Prewier was the best person to testify about his habit and how he does it every single time. Their testimony clearly would have justified cumulative, and I think it's within the judge's discretion to limit cumulative evidence. Similar to Justice Hudson's question, why wouldn't this testimony be corroborative as well as cumulative? And if it was corroborative, why wouldn't it be admissible even though it might be, as you say, cumulative? You know, and forgive me, I don't know that I can quite explain the difference between cumulative and corroborative. They're spelled differently. They are. I can spell them. I don't know if I can stand up here. Corroboration means that, as Justice Hudson indicated, evidence is coming from a different source, and dependent on the source and its level of disinterest or impartiality or credibility would tend to corroborate what was being said. If they had said nothing more than they saw that he didn't have a seat belt on this date, you could argue that it's cumulative because he said he didn't have it. But it could also be corroborative because they said they didn't see him not wearing a seat belt, or put another way, they actually saw that he was wearing a seat belt. And ironically, the police officer didn't even need the testimony of the two other witnesses because he had told the defendant that I saw you driving or sitting as a passenger without a seat belt, but I will give you the benefit of the doubt because you say you weren't, or that you weren't in violation, that you had your seat belt on. So even the police officer didn't necessarily accept the corroboration of the parties, even though he might have realized that that was the reason why, if a ticket had been issued and a trial had been had, maybe the jury might tend to believe them if, in fact, they said, yes, I was there, he didn't spit on your shirt, he didn't call you a dirty name, and so on and so forth. So it's corroborative in the sense that it's not cumulative. Now, to me, cumulative means that for what it's worth, it means it's redundant, okay? And it also means that there isn't a level of credibility that would indicate that something is more probably true than not true. So I won't send you a bill. Thank you. You're being very punctilious, by the way. Yes. Thank you. Okay. I love being punctilious. P-U-N-C-T-I-L-I-O-U-S. Do your honors have any other questions? No. I hate to not use all my time. Thank you. Thank you. Mr. Mayo, is your nickname FedEx by any chance? No, but maybe it needs to be. Thank you, your honors. One matter that I wanted to clarify here, on the issue of habit testimony, Mr. Puryear did not get to testify that it was, in fact, his habit to wear his seatbelt. Ultimately, he did testify that not once in his life has he failed to wear his seatbelt. But the ruling of the trial court on the motion eliminated that the defense had filed was to deny him the ability to put on habit testimony, whether that's from himself or from his wife, Nicole Puryear, regarding whether it was that semi-automatic. Let me just interject. Does that end the inquiry? If we were to perceive or find, let's say, for the sake of the argument, there was an erroneous evidentiary ruling on the issue, isn't there something else that has to be shown besides the fact that it should have been admitted? Well, your honor, if the court concludes that that was, in fact, error, it should be the village that would then have to say that it was harmless. And in this case, I don't think that they can do that. I think under the case law, the party seeking reversal bears the burden of establishing that they were prejudiced by the violation and it affected the outcome of the case. The opponent seems to be arguing, well, that evidence did, in fact, get before the jury, albeit not with cooperation. So how did this ruling affect the outcome of the case? It's different for someone to say, especially a defendant, to say, I do this every time. Who knows if it's because the vehicle makes a beeping sound every time he forgets. He still wears a seatbelt every time. It doesn't make it a habit. He's the only person that knows what his habit is. And he was allowed to testify. His wife isn't with him all the time. And certainly his brother-in-law is not with him most of the time. So the only person who was qualified to testify as to his habit and routine was him. And he testified that he always wears a seatbelt. Your honor, I think that it is proper for a witness, especially someone so closely related to the defendant in this matter, who travels with him so frequently, to testify about her observations and what she sees as far as when he puts his seatbelt on, if there's any prompting needed, if there's any mental, clearly mental processing that's going on before he puts his seatbelt on. Nicole Puryear was prepared to testify that Eric puts on his seatbelt semi-automatically, that there's no prompting or reminder involved. I think, it's not what I think, she would be able to put on that testimony. And based on the case law, based on the language of Illinois Rule of Evidence 406, that would have been proper testimony, supposing that that foundation was laid. Even though Mr. Puryear is the only person that truly knows what goes through his head, his actions speak to that as well.  Nicole should have been able to testify as to her observations and what that meant. I also wanted to address the issue of the motion to suppress as well. The duration of the stop, the position of the defense is that the stop itself was unreasonable. But more to the point, the court in this matter, the trial court, found that the duration was unreasonably prolonged. Mr. Puryear's information was returned to him. It was clear to him at that point he was free to leave. The case law on this is fairly simple and determinative. Once the information is returned and the person is told they're free to leave, that's the end of the stop. This stop was over. It doesn't get any... What about the defendant summoning Mr. Puryear, summoning the officer back to the car? He didn't ask for a citation. I understand that, but the officer presumably would have driven off, correct? Yes. Absent the engagement of Mr. Puryear with the officer. Absolutely correct. Whether he regrets that, I guess, is in his mind at this point. Well, he's not the driver. Yes. Was the driver further detained? He could have just pulled away. He may have been able to. He could have just pulled away. The stop was over. He decided to remain there to allow the conversation to continue. Yes. That's not a traffic stop. That's voluntary engagement of the officer. Mr. Puryear was detained in that his information was taken from him and returned to the squad car. The officer changed his mind as a result of his conversation with Mr. Puryear. But Mr. Puryear wouldn't have been free to leave then because his information, his property, has been taken from him. And so he was detained. The officer changed his mind. Yes, he did. And he's not free to do that? He is free to change his mind. He's not free to, for no reason, detain someone unreasonably. And that is what he did here. The stop was over. The reason for the original detention had ended. Thank you. Thank you. The case will be taken under advisement. There are other cases on the call. There will be a short recess.